Argued and submitted February 25, reversed and remanded with instructions on plaintiff's adverse possession claim; paragraphs 3 and 4 of the judgment vacated and remanded for reconsideration; otherwise affirmed July 15, 1998

Barbara P. SULLIVAN,
*Appellant,*

*v.*

Ronald H. JOHNSON
and Annette G. Johnson,
*Respondents.*

(CCV9510466; CA A96454)

964 P2d 270

Gary G. Linkous argued the cause and filed the brief for appellant.

A. Gregory McKenzie argued the cause and filed the brief for respondents.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals from a judgment in which the trial court partially granted plaintiff's claim for adverse possession, denied plaintiff's request to establish a boundary pursuant to ORS 105.705, and awarded defendants damages for trespass. We affirm in part, reverse in part, and remand.

The parties dispute ownership of an area of land that extends in some places more than 10 feet west of the boundary described in their deeds. Plaintiff asserts that she and her predecessor in interest adversely possessed the disputed land. Defendants contend that plaintiff has not satisfied the elements of adverse possession and counterclaim for trespass and ejectment.

On *de novo* review, ORS 19.415(3); *see, e.g., Davis v. Parke*, 135 Or App 283, 285, 898 P2d 804, *rev den* 321 Or 560 (1995), we find the following facts: Plaintiff, Barbara Sullivan, and defendants, Robert and Annette Johnson, own contiguous pieces of property on Autumn Lane in the Broadview Annex subdivision on Mt. Hood. Plaintiff's property is directly west of defendants' property. Between 1972 and 1974, defendants built their house on lot 1700 of Broadview Annex. From 1974 to 1984, defendants used the house recreationally, for weekends and longer visits during some summers. Since 1984 defendants have used the property exclusively as a rental, although they visit the property from time to time.

In 1973, plaintiff's predecessor in interest, Wendell Mason, built a house on lot 1800 of Broadview Annex. As built, the house had a garage attached to its east end ("old garage"). Sometime before 1975, Mason added a concrete parking pad in front of the old garage. In 1974 and 1975, Mason added a woodshed ("old shed") to his property. The old shed had as its west wall the old garage. As originally built, the old shed was open in front and behind. Its roof was corrugated plastic, and its east side was covered with plastic sheeting. Mason used the old shed to store wood. At undetermined times between 1975 and 1985 the east side of the old shed was improved: first the plastic sheeting was replaced with corrugated plastic, then later with T-111 siding. Also at

some time during that decade, T-111 siding was added to the front of the old shed. At some time after plaintiff purchased the house in 1985, she replaced the T-111 siding on the front of the old shed with a garage door.

Within a year of building the old shed, Mason put down gravel in front of the old shed. He did so because his visitors would park there and sometimes would get stuck in the mud when the weather was bad. Several witnesses had parked on the gravel in front of the old shed. In particular, Mason's sister, Nadene Duffield, who visited Mason regularly and took care of the house between his death in 1982 and the sale of the house to plaintiff in 1985, nearly always parked her car on the gravel. She parked her entire car on the gravel, not part on the gravel and part on the concrete pad. Another witness—who frequently visited Mason, and later Duffield, for the weekend—and her husband treated the gravel parking area in front of the old shed as "their spot." There was sufficient room for this couple's entire Chevrolet Blazer on the gravel. When getting out of the Blazer on the passenger side, there was sufficient additional room to walk on the gravel. That witness estimated that the gravel extended eight to 10 feet east of the concrete parking pad. Plaintiff, her family members and guests have regularly used the gravel area in front of the old shed for parking. Often one car would be parked on the concrete pad while another car would be parked alongside it on the gravel in front of the old shed.

This dispute arose in 1993, when plaintiff added a "new shed" onto the east side of the old shed. In October 1993, defendants informed plaintiff that they believed that not only part of the new shed, but also part of the old shed, encroached onto their property. That was plaintiff's first notice that she might be using property not described in her deed.

In October 1995, plaintiff filed a complaint to establish a boundary between her property and defendants' pursuant to ORS 105.705.[1] In March 1996, she amended her

---

[1] ORS 105.705 provides, in part:

"(1)  When any dispute or controversy exists between owners of adjacent or contiguous lands in this state, concerning the boundary lines thereof, or the

complaint to include a claim for adverse possession. In her amended complaint, plaintiff alleged that she and Mason had adversely possessed[2] a strip of land bounded on the west by the actual boundary and on the east by a parallel line 10 feet from the actual boundary. Defendants counterclaimed for trespass, seeking damages of $5,000 for plaintiff's alleged encroachment on the disputed area, and ejectment, seeking a judgment of ejectment of plaintiff's allegedly encroaching structures.

On October 29 and 30, 1996, the case was tried to the court. At the close of plaintiff's evidence, plaintiff moved to amend the complaint to conform to the evidence. Under the resulting second amended complaint, plaintiff modified the description of the allegedly adversely possessed area. The modified area was a triangular piece of land. The first leg of the triangle ran from the southeast corner of lot 1800, on Autumn Lane, to the northeast corner of lot 1800, on the Sandy River. The second leg of the triangle ran from the northeast corner of lot 1800 to a point on Autumn Lane, intersecting a point 10 feet east of the southeast corner of the old shed and continuing south to Autumn Lane. The base of the triangle ran from the southeast corner of lot 1800 to where the second leg intersected Autumn Lane.

The following map *generally* illustrates the disputed area, with reference to the parties' contentions and the trial court's ultimate disposition:

location of the line dividing such lands, any party to the dispute or controversy may bring an action * * * for the purpose of having the controversy or dispute determined, and the boundary line or dividing line ascertained and marked by proper monuments upon the ground where such line is ascertained."

[2] On appeal, defendants assert that plaintiff's amended complaint was worded in terms of the adverse possession statute, ORS 105.620, which contains, in addition to the common-law elements of adverse possession, the requirement that claimants have an "honest belief" upon entering possession that they were the actual owners of the disputed property. Because we conclude that plaintiff met all the statutory elements as to some of the disputed property, but failed to meet some of the common-law elements as to the rest of the disputed property, we need not decide whether, as defendants assert, plaintiff's claim must be assessed only as a statutory adverse possession claim.

On January 30, 1997, the trial court entered a judgment:

"1. The encroachment of the [old shed] establishes adverse possession of that portion of the defendants' property together with an easement to enter onto defendants' property to maintain the woodshed.[3]

"2. The use of the parking area in front of the [old shed] establishes adverse possession of that portion of defendants' property from the southeast corner of the woodshed *parallel to the boundary line* of Lots 17[00] and 18[00], Broadview Annex, to its intersection with Autumn Lane. Plaintiff shall obtain a survey of the new property boundary line between Lot 17[00] and Lot 18[00] at plaintiff's expense and in accordance with the new boundary line as defined herein. The parties may enter a Supplemental Judgment to include the actual surveyed legal description of the new boundary line * * *.

"3. The gravel drive and landscaping brickwork placed on defendants' property in 1993 shall be removed by the plaintiff at her expense and the property restored to its natural state.

_____

[3] At least insofar as it encroached on defendants' property, the new shed was removed before trial.

"4. Plaintiff's request to establish a boundary under ORS 105.705 is denied.

"5. Defendants are awarded nominal damages in the amount of $1,000 together with their costs and disbursements."

(Emphasis supplied.)

Plaintiff appeals, raising several assignments of error. In her first assignment of error, plaintiff contends that the trial court erred in failing to award her the entire area she claimed in her second amended complaint to have adversely possessed. In her second assignment of error, she asserts that the trial court erred in failing to establish a boundary under ORS 105.705, encompassing the same area. We reject those arguments without further discussion and, consequently, affirm the trial court's judgment with respect to the claim to establish a statutory boundary under ORS 105.705. However, for the reasons described immediately below with respect to plaintiff's third assignment of error, we remand for entry of a modified judgment on the adverse possession claim.

In her third assignment of error, plaintiff contends that the trial court erred in describing the portion of the gravel parking area that she had adversely possessed. Plaintiff asserts that the trial court erred in concluding that the proper area is a nearly triangular one described by extending a line from the southwest corner of the old shed *parallel to the actual boundary*. Instead, plaintiff argues, the proper area is a rectangular one described by extending a line from the southwest corner of the old shed *perpendicular to Autumn Lane*. That is, plaintiff asserts that the trial court erred in failing to include, as adversely possessed property, the cross-hatched area on the map above.

On *de novo* review, we conclude that the trial court erred in its description of the area that plaintiff adversely possessed. We conclude that the regular use of the gravel area in front of, and perpendicular to, the old shed by plaintiff and Mason clearly and convincingly establishes all the elements of adverse possession as set forth in ORS 105.620.[4] We

---

[1] ORS 105.620 provides, in part:

further conclude that there is clear and convincing evidence that cars were regularly parked entirely on the gravel and parallel to the concrete parking pad. That orientation required use of a rectangular area created by dropping a line from the southwest corner of the old shed perpendicular to the street.

In that regard, we note that the trial court's findings indicate that it believed plaintiff's witnesses—who testified that plaintiff and Mason used the gravel area in front of the old shed for parking for more than 10 years—and that it disbelieved defendants' witnesses—who testified that the gravel area in front of the old shed was not regularly used for parking before 1993, except for an encroaching tire or two. *See generally Markovich v. Chambers*, 122 Or App 503, 507, 857 P2d 906 (1993) (appellate court, on *de novo* review, gives some degree of deference to the trial court's credibility determinations). Nevertheless, the area awarded by the trial court is not consistent with the testimony that the trial court apparently believed. Moreover, despite defense counsel's assertion to the contrary at oral argument, there is simply no evidence in the record that the configuration of the area was such that cars had to either park in, or approach, the gravel area "at a slant." In fact, photographs in the record show a vehicle in the gravel area parked *parallel* to the concrete parking pad. There is clear and convincing evidence that the gravel parking area has been so used virtually since its

---

"(1) A person may acquire fee simple title to real property by adverse possession only if:

"(a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b) At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A) By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B) Had an objective basis; and

"(C) Was reasonable under the particular circumstances; and

"(c) The person proves each of the elements set out in this section by clear and convincing evidence."

installation. Consequently, the area described in the judgment does not comport with the clear and convincing evidence of plaintiff's and Mason's adverse use of the cross-hatched area.

We thus reverse that part of the trial court's judgment that describes the area that plaintiff adversely possessed and remand for entry of judgment modifying the description of the adversely possessed area to include the area from the southeast corner of the old shed perpendicular to Autumn Lane.

Plaintiff's fourth assignment of error challenges that aspect of the trial court's judgment that directed that

> "[t]he *gravel drive* and landscaping brickwork *placed on defendants' property in 1993* shall be removed by the plaintiff at her expense and the property restored to its natural state."

(Emphasis supplied.) Plaintiff's fifth and sixth assignments of error concern the trial court's award of damages and costs to defendants. Our disposition of plaintiff's third assignment of error *may* alter the trial court's disposition of those matters. Accordingly, we vacate paragraphs 3 and 5 of the trial court's judgment and remand to the trial court to reconsider those matters in light of the reconfiguration of the adversely possessed area.

On plaintiff's adverse possession claim, reversed and remanded with instructions to enter judgment for plaintiff on that claim in accordance with this opinion; paragraphs 3 and 5 of the judgment vacated and remanded for reconsideration in light of this opinion; otherwise affirmed.