Argued and submitted May 12, reversed and remanded for entry of judgment quieting title in plaintiffs June 28, petition for review denied September 5, 1995

(321 Or 560)

Edson DAVIS
and Opal Davis,
husband and wife,
Trustees of the Davis Family Trust,
*Appellants,*

*v.*

John E. PARKE
and Janice L. Parke,
husband and wife,
*Respondents.*

(94CV009; CA A85859)

898 P2d 804

Michael Duane Brown argued the cause for appellants. With him on the briefs was Churchill, Leonard, Brown, Lincoln, Lodine & Hendrie.

George W. Kelley argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Leeson, Judges.

EDMONDS, J.

**EDMONDS, J.**

This action involves ownership of a disputed strip of land. Plaintiffs seek a judgment declaring them to be the owners of the disputed property by adverse possession, declaring the legal boundaries of the property, and for injunctive relief. The trial court quieted title to the disputed property in defendants, and plaintiffs appeal. On *de novo* review, ORS 19.125(3), we reverse.

Plaintiffs live on a 95-acre ranch, which they purchased in 1959. Their property borders defendants' property on the north, south and west. A common fence indicates what plaintiffs believed was the property boundary. In 1993, defendants had a survey performed that confirmed that the fence was not the actual boundary line, and that the actual boundary line is on plaintiffs' side of the fence or inside the fence line on the west and the south. The difference in area between the property that is fenced and the actual boundary is approximately 2.56 acres.

Before plaintiffs purchased their property in 1959, plaintiff Edson Davis (Davis) walked the fence line, which led him to believe that his land extended to the fence. Shortly thereafter, plaintiffs bought cattle and turned them loose on their property. Within a year, plaintiffs had approximately 16 head of cattle that roamed the property, including the disputed property up to the fence. Although the disputed property is not good grazing land, nevertheless the cattle traveled along the fence and foraged under the trees and in the brush. The cattle also traversed trails that lead along the fence line on the disputed property to other pastures on plaintiffs' property.

The fence consists primarily of boards and barbed wire and runs along the entire length of the disputed boundary. At trial, the surveyor testified about the condition of the fence in 1993. He said:

> "It's pretty much continuous. It's at some states — various states of disrepair, I guess. Some of it is better than others. Up there towards the north in particular there's some spots where it's, as I recall, just one or two strands of wire left."

The actual survey, which was introduced as an exhibit, describes the fence condition as being between very poor and

fair condition. Davis testified that he and defendants' predecessors in interest, the Clarks, repaired the fence together and treated it as the boundary while the Clarks owned defendants' property. The Clarks and plaintiffs kept livestock on their respective sides of the fence. Thomas Cox, a neighbor of plaintiffs and defendants, testified that in the mid-1960's, he would go to plaintiffs' property to retrieve his own cattle. He testified that during that time, the fence was sufficient "to turn the stock," and that plaintiffs were using the fence to keep their cattle enclosed while the Clarks kept their livestock on the other side of the fence. Cox also testified that plaintiffs' cattle traveled throughout the disputed property and that there were cow trails along the fence.

Defendants moved onto their property as renters in 1972 and purchased it from the Clarks in 1975. At that time, they did not know the actual boundary of their property. Defendants testified that when they bought their property, the Clarks told them that they did not know where the actual boundary was, but that it was beyond the fence line. In 1993, defendants logged a portion of their property up to the fence line. After defendants had the survey performed that indicated that the boundary extended beyond the fence line, this dispute ensued, and plaintiffs filed this action claiming that they owned the disputed property through adverse possession.

◼ To establish title by adverse possession, a party must show clear and positive proof of actual, open, notorious, exclusive, continuous and hostile possession of the property for a 10-year period.[1] ORS 12.050; *Scholler v. Kulawiak*, 118 Or App 524, 528, 848 P2d 619, *rev den* 317 Or 272 (1993). The trial court found, in part:

"This is a case of 'pure mistake'. The plaintiffs have had an honest, objective, and reasonable, although mistaken, belief of ownership of the property they have occupied for 35 years. Therefore inquiry into the plaintiffs' actual intent is not necessary, since possession under a mistaken belief of ownership satisfies the element of hostility. The plaintiffs' use of the land was in excess of ten years. The type of use was

---

[1] Under plaintiffs' theory, their interest vested before the enactment of ORS 105.620, and, therefore, that statute is inapplicable. *Kohler v. Alspaw*, 132 Or App 67, 70, 887 P2d 832 (1994).

continuous for those ten years, and was under color of title or claim of right. I believe I could even conclude that their use of the land was exclusive given the minor use of the land by the defendants. There was no evidence of the use of the land by defendants' predecessors. The [plaintiffs] then would have carried their burden of proof as to five of the seven elements."

However, it determined that plaintiffs did not establish that their possession was actual and open and notorious.[2] We disagree.

■■     Actual possession requires

"occupation or use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suitable." *Lee v. Hansen*, 282 Or 371, 376, 578 P2d 784 (1978).

Plaintiffs used the disputed property the same way that they used their adjoining land. Plaintiffs maintained the fence for that purpose, although they were not always successful in keeping their cattle inside it. Their cattle roamed throughout the disputed property up to the fence line. The fact that plaintiffs' cattle did not spend a lot of time grazing on the disputed property does not defeat their claim for adverse possession. In *Montgomery v. Sellers*, 48 Or App 719, 724, 618 P2d 5, *rev den* 290 Or 211 (1980), we said,

"Although plaintiffs did not do much with the disputed strip of property, they used it in the same way they used the rest of their land: they used it for recreation, they did some trimming and clearing and they occasionally repaired the fence. These are the types of uses to which an owner would put such land."

As in that case, plaintiffs put the disputed land to the type of use that an owner would make of the land.

■     The trial court also determined that plaintiffs' possession of the disputed property was not open and notorious because:

"This particular property was basically obscured by the topography of the land, the vegetation of the land, and its

---

[2] The trial court did not believe that plaintiffs had demonstrated actual possession, because the cows were not grazing on pasture land but were merely traversing the disputed property on their way to "greener pastures."

> distance from the house of the defendants. There is no way they would have been able to see the cattle of the plaintiffs on a regular basis travelling across the disputed property. That land sloped away from their house. The activity of the plaintiffs on the disputed parcel was not visible. Not being visible [it] could not rise to the level of open and notorious."

Plaintiffs' use of the land for their cattle began in 1960. By the time defendants purchased the land, plaintiffs had already acquired adverse possession of it. The Clarks and plaintiffs treated the fence as the boundary line between the properties. Even their neighbor was aware of that practice. In *Slak v. Porter*, 128 Or App 274, 279, 875 P2d 515 (1994), we said:

> "Notice of the adverse possession may be actual or constructive. * * * Construction of a fence, in fact, is recognized as a 'classic' example of the type of use that satisfies the requirement of open and notorious use." (Citations omitted.)

However visible the fence was to defendants, the evidence demonstrates that from 1959, plaintiffs' use of the disputed parcel was open and notorious. We find that plaintiffs have carried their burden of proving that they acquired title to the disputed land by adverse possession.

Reversed and remanded for entry of judgment quieting title in plaintiffs.