Argued and submitted March 2, reversed August 1, 2001

Martha McINTYRE,
*Respondent,*

*v.*

Panos J. PHOTINOS,
*Appellant.*

97-2188-E-1; A107053

28 P3d 1259

Kurt H. Knudsen argued the cause for appellant. With him on the briefs was Lombard, Knudsen & Holtey, LLP.

David V. Gilstrap argued the cause for respondent. With him on the brief was Davis, Gilstrap, Hearn, Saladoff & Smith, P.C.

Before Edmonds, Presiding Judge, and Landau and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant and plaintiff are neighboring property owners. Defendant appeals from a judgment declaring plaintiff to be the owner by adverse possession of a strip of land that is within the described boundaries of his property. ORS 105.620. He contends that the evidence is not sufficient to support the trial court's ruling. We review *de novo* and reverse.

Plaintiff's and defendant's properties were originally owned by a single grantor, Ochs. The parcel, before it was divided, was used as a child-care facility, and it contains two buildings. The buildings were connected by a covered walkway that was attached to both buildings. Ochs divided his land in 1986 into two parcels with a building on each and sold one of the parcels to plaintiff's predecessor, Boyer. As part of the sale to Boyer, Ochs severed the covered walkway in half and extended an existing fence across the walkway. Ochs testified at trial that he believed that the fence represented the property line and that he had conveyed everything on the other side of the fence to Boyer. In fact, the property line as described by the deed from Ochs to Boyer is nine to twelve feet inside of the fence on Boyer's side. Boyer used and maintained the disputed strip up to the fence while she owned it. Boyer then conveyed to Jones in 1987, whose tenants also used the property up to the fence line. Jones then sold to plaintiff in 1989, whose tenants watered the grass on the strip and stored possessions on it.

Ochs conveyed the remaining parcel to defendant in 1990. When defendant took possession of Ochs's parcel, the fence still existed. Defendant testified that he measured his property, that he has always believed the disputed parcel to be part of it and that the fence did not represent the property line. He said that he picked up trash from the disputed strip and mowed and watered the grass on it.

In 1994, plaintiff's tenant was required by a government agency to remove the fence, which had become hazardous and in disrepair. Plaintiff sent a contractor to rebuild the fence on the same location, and defendant's wife or child told the contractor that he could not put a new fence there

because the disputed strip belonged to them. The contractor told plaintiff about defendant's claim, and plaintiff ceased her effort to build a new fence. She researched her title and concluded that defendant's claim was erroneous. She did not measure the property to see whether it corresponded with the description in her deed, nor did she obtain a survey of the property. At nearly the same time, defendant's wife, who was in sole possession of defendant's property during a marital separation, offered to sell plaintiff an easement over the disputed strip for $500. Plaintiff pursued the offer, believing the settlement would have been less costly than having a formal survey performed. However, defendant's wife was unable to complete the transaction because the property was awarded to defendant in the divorce settlement.

In 1996, defendant told plaintiff to remove her tenant's possessions from the strip. Plaintiff contended that she had acquired the strip by adverse possession. Defendant then built a new fence on the true property line, which excluded plaintiff from the disputed strip. Plaintiff filed this action and asked the trial court to eject defendant from the strip and declare her ownership, claiming that she had acquired title to it through adverse possession.

After a trial at which Ochs, defendant, plaintiff, plaintiff's tenants, and a surveyor testified, the trial court ruled that plaintiff had obtained ownership of the strip by adverse possession and awarded her possession. The trial court's judgment omitted any judgment of ejectment. After the notice of appeal was filed, plaintiff moved for leave to have the trial court enter an amended judgment to include an order of ejectment. We denied plaintiff's motion, holding that, "the amended judgment entered on June 11, 1999, is a final, appealable judgment in that it disposes of plaintiff's sole claim." On appeal, defendant argues that (1) our standard of review in this case is *de novo*, because plaintiff was awarded only equitable relief, and (2) that the record does not support a finding of adverse possession. Plaintiff asserts that we should review for any evidence because plaintiff's ejectment action was at law and that there is evidence to support the trial court's findings.

The standard of review in this case turns on whether the judgment on appeal is "at law" or "in equity." If it is a judgment based on an action at law, our standard of review is whether the trial court's judgment is "supported by any competent evidence." *Roesch v. Wachter*, 48 Or App 893, 896, 618 P2d 448 (1980). If, however, plaintiff's action and the resulting judgment is in equity, we review *de novo*. ORS 19.415(3). "Whether a lawsuit is at law or in equity is sometimes a perplexing problem." *Carey v. Hays*, 243 Or 73, 77, 409 P2d 899 (1966). ORS 105.605 provides that a suit "to determin[e] such conflicting or adverse claims" is a suit in equity, but ORS 105.005 instructs that a person "who has a legal estate in real property and a present right to the possession of the property may recover possession of the property, with damages for withholding possession, by an action at law." "The usual basis for distinction is the nature of the relief sought." *Carey*, 243 Or at 77. Here, plaintiff sought both legal and equitable relief, and the trial court awarded only equitable relief.

In *McClory v. Gay*, 45 Or App 561, 608 P2d 1213 (1980), the plaintiff filed a suit in equity to foreclose a lien. The defendants asserted a legal counterclaim for breach of the construction contract. The only issue on appeal was the amount of damages awarded on the defendant's counterclaim. We said:

> "The case began as a suit in equity, was tried to the court without a jury and was concluded by entry of a decree. However, it is not the title given to the pleading nor the fact a decree was entered that determines whether the matter is one at law or equity. The distinction is in the nature of the relief sought." *McClory*, 45 Or App at 563-64.

We then concluded that, because the defendant's counterclaim was the only issue on appeal, our standard of review was for competent evidence to support the trial court's findings. Our holding in *McClory* informs the analysis of our standard of review in this case.

The judgment on appeal is a judgment declaring that "plaintiff is awarded title to the property * * * free of any interest by Defendant or those claiming through him." Plaintiff has not cross-appealed and does not contend that the trial court erred in failing to order ejectment. If we were to review

the case as an action at law based on the ejectment claim made in the original complaint, we would be reviewing an award that the judgment does not contain and would, in effect, have to disregard the nature of the judgment on appeal. Thus, we conclude that our standard of review is *de novo*.

In an adverse possession case, the party seeking to gain ownership and title to a piece of property must show actual, open, notorious, exclusive, continuous and hostile use of the property for a ten-year period, under an honest belief that the party is the owner of the property. ORS 105.620; *Rayburn v. Coffelt*, 153 Or App 76, 80, 957 P2d 580 (1998). Defendant raises three challenges to the sufficiency of plaintiff's evidence to prove adverse possession. His first and second challenges are to plaintiff's evidence of "continuous use" and "honest belief." His third assignment of error is that "there is insufficient proof that plaintiff and her predecessors made use of the disputed area in a manner sufficiently open, notorious or continuous[.]" We address the third contention first because it is dispositive.

Ochs, plaintiff and her tenants testified that plaintiff and her predecessors used the strip to store possessions and they mowed and watered it. The possessions included, at various times, cars, lawn trimmings, a rabbit hutch, and a trampoline. One tenant also had a garden on the strip. Ochs testified that plaintiff's predecessors never actively excluded him from the strip but that he did not enter it except on occasion because he did not believe it was his. Ochs also testified that plaintiff's predecessors did yard maintenance on the disputed area but that it was primarily bark chips rather than grass at that time. Plaintiff testified that her tenant Hauschild maintained the strip and that she was not aware that anyone entered the property on defendant's behalf. Plaintiff's tenant Hauschild testified that during her occupancy of plaintiff's property, from June 1989 to October 1990, she did not cut the lawn and that she "guess[ed] somebody else must have done it." She was unable to remember whether she had paid someone to mow the disputed strip, but she did produce evidence of having paid some children to do some weeding on the lawn, which may have included the disputed strip. Bishop-Wolff, plaintiff's tenant from 1992

through the date of trial, testified that she made extensive use of the disputed area for storage of personal belongings, for gardening, as a play area for her children, and generally for purposes consistent with residential ownership. She testified that defendant's children played with her children in the area and that she never excluded them from the property except when the children fought with each other. Bishop-Wolff also testified that she did not recall ever seeing defendant make use of the strip for similar purposes and that she did not believe he ever mowed it.[1]

Defendant testified that he believed from his deed description and from his visual inspection of his property that he was the owner of the disputed strip. He testified that the disputed area was a "no man's land" during the first few years of his ownership beginning in 1990. He testified that the typical "use" by plaintiff's tenants was that they would put beer bottles, trash cans and trash in bags in the area. He said that "cleaning [the disputed area] was a daily—daily routine," and that, since the fence came down in 1994, he has cleaned the area, cut the grass and watered the whole back yard, including the strip. Plaintiff testified that she never told defendant or his family members that she was treating the fence as the property line.

■    As we have stated above, the elements of adverse possession must be proved by clear and convincing evidence. ORS 105.620(1)(c). The fact that a party claiming adverse possession uses property openly and even exclusively for an extended period of time is not enough to give that party title by adverse possession because use of property is not inherently inconsistent with another's ownership interests. *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 563, 994 P2d 106 (1999). Rather, the law requires that an adverse possession claimant must "keep his flag flying, and present a hostile front to all adverse pretensions[.]" *Kitzerow v. Reinhardt*, 74 Or App 582, 587, 704 P2d 132 (1985), *quoting Olewine v. Messmore*, 128 Pa 470, 484, 18 A 495 (1889). Thus, where the title owner and the adverse possessor have both made use of the disputed land in ways commensurate

---

[1] The trial court made no express findings regarding the credibility of the witnesses.

with ownership of land of its type, we have held that the purported adverse possession was not sufficiently hostile to afford the kind of notice the law requires. *Kitzerow*, 74 Or App at 586.

■    Here, there is no evidence that defendant was ever excluded from the strip by plaintiff or her tenants and there is conflicting evidence that he used it as well as did plaintiff and her tenants. Specifically, defendant testified:

> "I have cleaned, I have cut the grass, and I have watered the whole back yard. I have a—a—one of these rotary

> "* * * * *

> "—sprinklers—I don't know what the technical term for it is, but it just waters the whole back yard.

> "* * * * *

> "And this includes the contested area—the contested area. And of course, the fear of—of—of fire and everything, not that that's my favorite thing, but I mow the grass myself. I have a lawn mower, I have a weed whacker, and I take care of the property front and back."

At the earliest, the ten-year period for adverse possession could have begun in 1986 when Ochs sold to plaintiff's predecessor, Boyer. To demonstrate adverse possession, plaintiff was required to show a use of the strip for a ten-year period that put defendant on notice as to her claim of ownership. By 1994, the fence was in disrepair, and plaintiff's efforts to rebuild it were met with resistance.[2] As to the use of the disputed strip by defendant, the evidence is in equipoise. On those facts, we find that plaintiff has not proved by clear and convincing evidence[3] that her use was a hostile assertion of possession to the *exclusion of defendant* for the required

---

[2] This case is distinguishable from those cases in which each party treated an existing fence as a boundary line and used the property only up to its side of the fence for a ten-year period. *See, e.g., Davis v. Parke*, 135 Or App 283, 898 P2d 804, *rev den* 321 Or 560 (1995).

[3] "Clear and convincing evidence" means evidence that makes a fact in issue "highly probable." *Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 737 P2d 595 (1987).

time period. As we said in *Kitzerow*, 74 Or App at 587, her flag "flew too low."

Reversed.