Argued and submitted December 2, 2003, judgment on Weisels' claim against appellant for maintenance costs of $8,358.88 reversed; otherwise affirmed
June 9, 2004

Edward J. MONTAGNE
and Luella Montagne,
husband and wife;
Alan G. Pake and Marilyn M. Pake,
husband and wife;
and Lee Weisel and Joann Weisel,
husband and wife,
*Respondents,*

*v.*

James F. ELLIOTT,
*Appellant,*
*and*

Roger F. WEST
and Jane R. West,
husband and wife,
*Respondents,*
*and*

Richard IRELAND,
Thomas F. Coleman, Mildred K. Coleman,
and Betty J. Elliott,
*Defendants.*

James F. ELLIOTT,
*Appellant,*
*and*

Betty J. ELLIOTT,
*Plaintiff,*

*v.*

Lee WEISEL
and Joann Weisel,
*Respondents,*
*and*

JACKSON COUNTY,
*Defendant.*

90-382-L-2, 93-3033-E-2; A118313

92 P3d 731

Thomas C. Howser argued the cause and filed the briefs for appellant.

William V. Deatherage argued the cause for respondents. On the brief were Allen E. Eraut and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Appellant James Elliott appeals a judgment in these consolidated actions that include claims for prescriptive easement rights and to enforce maintenance obligations involving a private roadway. The judgment declared that respondents Montagnes, Pakes, Wests, and Weisels have prescriptive easements in portions of a road that crosses appellant's property, enjoined appellant from unlawfully interfering with respondents' use of the easements, and required appellant to pay the Weisels a portion of the maintenance costs for the road.[1] The judgment was entered after a trial on remand from our decision in *Montagne v. Elliott*, 143 Or App 498, 923 P2d 1344 (1996) (*Montagne I*). Appellant makes four assignments of error, three of which require discussion. We reverse in part and otherwise affirm.

This dispute involves a segment of a road that crosses property that appellant owns and that provides access to three parcels owned, respectively, by respondents Pakes, Wests, and Weisels. Each of the parties' properties originally was part of a single 230-acre parcel owned by Ireland. In 1972, Ireland obtained county approval to create a way across the property. The way, as approved by the Jackson County Planning Commission, is described in a recorded document executed by Ireland. In 1974, in the course of selling some of the property to Thomas and Mildred Coleman, Ireland hired a contractor to build a road along the

---

[1] Appellant's notice of appeal designates James Elliott as "appellant" and the Montagnes, Pakes, Wests, and Weisels as "respondents." However, several of the parties are now deceased. For example, Alan Pake is deceased and thus no longer a party to this action. *See Ramirez v. Lembcke*, 191 Or App 70, 76, 80 P3d 510 (2003) ("[A]n action cannot be maintained against a deceased person."). In addition, the Montagnes have sold their property to the Weisels, and it is unclear what remaining interest they have in the subject of this litigation.

In sum, it is questionable whether appellant properly has designated certain parties as "respondents." However, the parties have made no motions to amend the case captions or to delete parties that no longer may have any interest in the litigation. *See, e.g.*, ORCP 34 B (providing for substitution in the case of the death of a party); ORAP 8.05(1) (adopting ORCP 34)). Because no party has raised any issue with respect to those designations and because they are convenient for purposes of recounting the facts, we adopt them in this opinion. We therefore use the term "appellant" to refer to James Elliott and "respondents" to refer to the Montagnes, Pakes, Wests, and Weisels, collectively.

way, which consisted of about six to eight inches of gravel for an 18-foot width over an existing path. The Colemans paid about half the costs of the road. Ireland testified that the road was "probably farm surveyed. In other words, we probably measured it with a tape and kept within the bounds of that."

In 1974, the Colemans sold separate portions of their property to the Montagnes, Pakes, and Wests. The Colemans intended the road along the way to provide access to those parcels. Appellant and his wife purchased a parcel of property from Ireland in 1979. The disputed segment of the road crosses that property. Appellant and his wife acquired the remaining Coleman property at a foreclosure sale in 1982. In approximately 1993, the Weisels, who were purchasing the Montagne property on contract, made some repairs to the disputed portion of the road and also extended the road past the point in dispute and across what had been the Coleman property until the Elliotts acquired it in 1982. In 1998, the Weisels acquired outright title to their property after completing the purchase from the Montagnes.

In 1980, the Colemans, Montagnes, and Wests entered into a road maintenance agreement (the road maintenance agreement). By its terms, the road maintenance agreement applies to the "Easement Easterly," which includes the portion of the way that crosses the Coleman property that appellant acquired in 1982 as well as the parcels owned by the Montagnes (now Weisels), Pakes, and Wests. The road maintenance agreement provided that it was "intended to run with the land and to be and constitute a lien and restriction upon each using ownership and shall be binding upon and inure to the benefit of the undersigned, his, her, or their heirs, personal representatives, successors and assigns." It was recorded in 1982, after appellant purchased the Coleman property at the foreclosure sale.

Because it is helpful to the resolution of appellant's first assignment of error, we discuss the procedural history of these actions at some length. In 1990, the Montagnes and Pakes filed an action for declaratory and injunctive relief against the Irelands, Colemans, Wests, and Elliotts (the 1990 action), to establish their easement rights in the roadway. In April 1993, after a trial on the merits, the trial court

declared an express easement across the road in favor of the Montagnes, Pakes, and Wests, even though the court noted that portions of the road were situated outside the recorded description of the way. The Elliotts appealed the judgment in that case. The Elliotts designated the Montagnes, Pakes, and Wests as respondents on appeal.

In September 1993, the Elliotts filed a separate action (the 1993 action) against the Weisels, who were then purchasing the Montagne property under contract. In that action, appellant sought to enjoin the Weisels from constructing a new road to their property along the way. In October 1993, the Elliotts filed a motion to join the Weisels as parties to the pending appeal in the 1990 action. This court granted that motion in November 1993. During the pendency of the appeal in the 1990 action, the parties twice filed stipulated motions to continue trial dates that had been set in the 1993 action. Each motion stated that the parties believed "resolution of the issues in [the 1990 action] should substantially resolve the issues in [the 1993 action]." The trial court granted the first motion in October 1994 and the second motion in November 1995. We issued our decision in *Montagne I* in September 1996.

In *Montagne I*, we concluded that respondents had express easements over the portion of the way that crossed the property that the Elliotts had acquired from Ireland.[2] 143 Or App at 503. In addition, we stated:

"[Respondents] have been using a gravel road across Elliotts' property as access to their properties. They contend that the road lies within the way and the easement, and the trial court agreed that it is substantially within the way. For their fourth assignment, Elliotts assert that that finding is error. As described in the recorded document, the way is 60 feet in width and runs along a line parallel to and 30 feet north of the average centerline of Butler Creek. The existing road roughly meets that description but is only 10 feet wide and deviates from the recorded description in at

[2] Although we used the term "plaintiffs" in *Montagne I* without indicating the specific parties to whom we were referring, it is clear that our holding with respect to the express easement also applied to the Wests even though they were denominated "defendants-respondents" in the appeal.

least six locations. Although there was no evidence presented that a road could not be built within the described way, there was evidence that a precise adherence to the recorded description would place the road south of the court's approved location and partly within the creek bed. Nonetheless, the road must be within the recorded description of the way. This record does not show that the road that now exists is within the way. In developing the road, unless otherwise agreed, the parties must adhere to the recorded description."

*Id.* at 503-04. We remanded the case with the following disposition:

"Reversed with regard to determination that the existing road location is within recorded description of way and remanded for further proceedings; otherwise affirmed."

*Id.* at 504.

In April 1997, respondents filed a motion on remand to amend their complaint in the 1990 action to include claims that they had acquired prescriptive easements over those portions of the road situated outside the recorded description of the way. The trial court denied the motion, stating that the scope of remand in *Montagne I* was limited to "the sole issue of determination of the location of the deeded easement."

Although the record contains no order consolidating the 1990 action and the 1993 action, it is apparent that the actions were consolidated after we decided *Montagne I*.[3] In May 2000, the Weisels filed a motion to amend their answer in the 1993 action to add a counterclaim for a judgment declaring that they hold a prescriptive easement across the portions of the road that are situated outside the recorded description of the way and to allow the Wests and Marilyn Pake to become additional parties plaintiff to that counterclaim.

---

[3] There is an entry in Oregon Judicial Information Network (OJIN) indicating that the cases were consolidated on March 1, 2000, but there is no record of a motion or an order to consolidate. Appellant does not assign error to the trial court's decision to consolidate the cases. We therefore do not consider that issue.

The trial court granted the motion, stating, in part:

"Defendants Weisel * * * seek to amend their answer and to assert a counterclaim to allege a 'prescriptive right' to use the road in question. Weisel attempted to amend and make this assertion in [the 1990 action] prior to appeal. Because that amendment was denied, plaintiffs Elliott * * * assert that this matter is now barred under the theory of claim preclusion or law of the case. Because I conclude that the assertions in support of Weisel's claim involve the underlying facts and circumstances presently before the Court in the consolidated cases and that justice demands that all such issues be resolved in this litigation, the motion for leave to amend is granted."

In their second amended answer and counterclaims, respondents included counterclaims for prescriptive easements in those portions of the road that are situated outside the recorded description of the way, as well as an additional counterclaim by the Weisels for the cost of maintaining the road. In the latter counterclaim, the Weisels alleged that they had entered into the road maintenance agreement with appellant's predecessors in interest, the Colemans, that they had complied with the agreement and had undertaken road repairs, and that appellant was required to pay a portion of those costs based on the agreement. The counterclaim did not specifically identify a statutory basis for recovery.

Appellant filed a motion for reconsideration of the order allowing the pleading amendment, arguing, as he does on appeal, that the Weisels had been joined as parties on appeal in *Montagne I* and, thus, were "subject to the appellate decision in that case resolving the very issues that [respondents] are now trying to reassert" in the 1993 action. Respondents replied that the cases were not consolidated before our decision in *Montagne I* and that, as a result, there was no final judgment entered in either case that could serve as a basis for claim preclusion or law of the case. The trial court denied the motion for reconsideration.

The consolidated actions were tried to the court in June 2001. At trial, Edward Montagne, Roger West, and Marilyn Pake each testified concerning their use of the road. Each of those witnesses stated that he or she had intended to

use their properties for retirement purposes. Montagne testified that he visited his property twice per year from the time he purchased it in 1974 until 1984. In 1984, Montagne moved to Oregon and "occasionally" visited the property to "look at options of * * * build[ing] a home" on it. West stated that he had visited his parcel approximately four times since he purchased it in 1974. Both Montagne and West testified that they contributed funds for road improvements that Coleman undertook in about 1976 and that they had authorized realtors, workers, and other people to use the road to obtain access to their properties. Pake testified that she visited the property a few times in the 1970s and again in 1994. She stated that she and her husband also had contributed funds for the road repairs in 1976. Each of the respondents who testified stated that they had used the road to obtain access to their properties when they visited them.

Elliott testified that he permitted other people to cross his land to obtain access to their properties and, more specifically, that he gave such permission to the Montagnes in 1984. However, Edward Montagne, Roger West, and Marilyn Pake each testified that they did not believe that they needed Elliott's permission to use the road, because they thought that the road provided legal access to their properties. All three were unsure whether the road had remained in the same location since 1974; Montagne specifically stated that he was unaware whether the road was located within the recorded description of the way. Other witnesses, including Coleman and the contractor who constructed the original road, testified that they believed the current road was in the same location as it had been when it was originally built in 1974. Aerial photographs of the area in 1980 and 1996 show the road in roughly the same location at those times.

After trial, the trial court made written findings of fact. With respect to the prescriptive easement claims, the court found that respondents had proved each of the elements of their claims. As to the Weisels' counterclaim, the court found that appellant was not aware of the road maintenance agreement when he acquired the Coleman property but that the Weisels nonetheless were entitled to recover a portion of their road maintenance costs from appellant under

ORS 105.175. The court entered a judgment granting pre-
scriptive easements to the Pakes, Wests, and Weisels in those
portions of the road situated outside the express easement
described in *Montagne I* and awarding the Weisels a money
judgment against appellant for maintenance costs in the
amount of $8,358.88.[4]

■      In his first assignment of error, appellant asserts
that the trial court erred in allowing respondents to amend
their answer in the 1993 action to add their prescriptive ease-
ment claims and the Weisels' claim for maintenance costs.
Appellant insists that the 1990 and 1993 actions were consol-
idated on appeal in *Montagne I* and that the amendments
added claims that were beyond the scope of our limited
remand in *Montagne I*. Respondents counter that the trial
court had discretion to allow the amendment after remand
and that, in any event, the 1990 and 1993 actions were not
consolidated until after the first appeal. We conclude that the
latter assertion is dispositive.

■      The record discloses that the 1993 action was not
consolidated with the 1990 action before we decided
*Montagne I*. Rather, in light of the pendency of the appeal in
the 1990 action, trial dates in the 1993 action were twice con-
tinued. As the trial court correctly noted, the 1993 action was
never before us in *Montagne I*. Accordingly, it was not limited
by the scope of our remand in *Montagne I*. Appellant urges no
other basis on which the trial court erred in granting respon-
dents' motion to amend their answer in the 1993 action.[5]
Therefore, we reject his first assignment of error.

_____

[4] The trial court's original judgment was entered in 2002; however, it did not
dispose of all claims in the consolidated action, and it was entered in the trial
court's case register in only the 1990 action. On March 17, 2004, we issued an order
giving the trial court leave under ORS 19.270(4) to enter a new judgment in both
actions. On April 23, 2004, the trial court entered a general judgment and money
award in both actions that adjudicated all claims in the actions. Thereafter, appel-
lant filed his notice of intent to proceed with this appeal.

[5] In his reply brief, appellant refers to principles of claim preclusion. It is argu-
able whether appellant has properly raised that issue. *See Garcez v. Freightliner
Corp.*, 188 Or App 397, 404, 72 P3d 78 (2003). Nevertheless, even if appellant's
argument were properly raised, claim preclusion could not apply because, as
respondents noted to the trial court, there was no final judgment in the 1990 action
to which we can accord preclusive effect. *See Rennie v. Freeway Transport*, 294 Or
319, 323, 656 P2d 919 (1982) ("[A] plaintiff who has prosecuted one action against

■ Appellant next assigns error to the trial court's determination that respondents proved their prescriptive easement claims. We review *de novo* the trial court's findings with respect to those claims.[6] *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 310, 33 P3d 1011 (2001), *modified on recons*, 180 Or App 314, 44 P3d 607 (2002). Appellant argues that the few visits paid by the Montagnes, Pakes, and Wests to their respective properties over the years were insufficient to establish their continuous use of the road and that, in any event, their use was not "open and notorious." Appellant also argues that any use of the road was with his permission and, thus, not adverse.

Respondents counter that the Montagnes, Pakes, and Wests intended to use their properties for retirement purposes and, therefore, their infrequent visits, coupled with evidence that the road has been in the same location since 1974 and that they contributed funds for improvements to the road in 1976, were sufficient to establish their open, notorious, and continuous use of the road. They also point to the fact that appellant was aware of the existence of the "way," which was referred to in his contract of sale with Ireland, and thus "was able to determine whether the road fell within the [way]." At oral argument, respondents also argued that the road itself furnished sufficient evidence of their use to give appellant notice of respondents' prescriptive easement claims.

■ In order to establish a prescriptive easement in the portions of the road situated outside the recorded description of the way, respondents must demonstrate, by clear and convincing evidence, "open, notorious, and adverse use of the

---

a defendant *through to a final judgment* * * * is barred on *res judicata* grounds from prosecuting another action against the same defendant * * * based on the same factual transaction * * *." (Emphasis added.)).

[6] ORS 19.415(3), which provides for *de novo* review, was amended in 2003. Or Laws 2003, ch 576, § 88. That amendment applies to the appeal of judgments that were entered on or after the effective date of the legislation, January 1, 2004. Or Laws 2003, ch 576, § 90a. In this case, the original judgment was entered before the effective date; however, the judgment entered by the trial court pursuant to ORS 19.270(4) was entered after the effective date of the act. *See* 193 Or App at 648 n 4. Because no party asserts that the 2003 amendments to ORS 19.415(3) apply, we do not address that issue.

way that is continuous for a period of ten years."[7] *R & C Ranch, LLC*, 177 Or App at 310-11 (citing *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974)); *see also Baylink v. Rees*, 159 Or App 310, 315-16, 977 P2d 1180 (1999) ("Easements by prescription are not favored by the law."). We first consider the continuous use requirement.

■       To satisfy that requirement, respondents need not have shown that they used the road daily, but "only * * * that [they] made such reasonable use of the way as [their] needs required." *Feldman et ux. v. Knapp et ux.*, 196 Or 453, 473, 250 P2d 92 (1952). As discussed, during the more than 20 years that they owned their properties, the Wests visited only four times and the Pakes two or three times. The Montagnes visited their property infrequently before they moved to Oregon in 1984. Respondents' use is scant in contrast to that of the claimants in several other cases where prescriptive easements were upheld based on intermittent use. *See, e.g.*, *Hay v. Stevens*, 262 Or 193, 195, 497 P2d 362 (1972) (path traversed during summers and weekends); *Baylink*, 159 Or App at 317, 320-21 (road used to access barn, mend fences, care for cattle, visit neighbors); *Beebe v. DeMarco*, 157 Or App 176, 180, 968 P2d 396 (1998), *rev den*, 328 Or 293 (1999) (path used during summers and, later, as often as five times per week).

■       However, *continuous* use "refers only to the character of the user's state of mind and requires only that the alleged easement be used in a manner consistent with the needs of the user." *Kondor v. Prose*, 50 Or App 55, 59, 622 P2d 741 (1981). Respondents' sporadic and infrequent visits were consistent with the facts that they resided—and, at the time of trial, the Wests and Pake still resided—outside Oregon and that they had purchased their properties for retirement use. Further, respondents contributed to the maintenance of the road in 1976, and the Wests and Montagnes authorized other people, such as realtors with whom those parties had listed their properties for sale, to use the road for access to their properties. Under the circumstances, respondents' use

---

[7] Whether respondents' use, if otherwise sufficient, persisted for at least ten years is not at issue on appeal.

of the road was consistent with the nature of their properties and their own needs and, therefore, was continuous.

■■  The question remains whether respondents' use of the road was sufficient to provide appellant with notice of their claims, in other words, whether the use was "open and notorious." *See Restatement (Third) of Property* § 2.17 comment i (2000) ("The physical aspect [of the continuity requirement] requires that the use be open or notorious throughout the prescriptive period * * *."). Although "slight or intermittent use may satisfy continuity requirements because of the nature of the use of the property, there is still the requirement that such use be open and notorious. Intermittent use may make it very difficult to satisfy that notice requirement." *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979). To satisfy the open and notorious use requirement, the use must have been such that appellant had a "reasonable opportunity to learn of its existence and nature." *Id.*; *see also Restatement* at § 2.17 comment h ("To be open a use must be made with sufficient frequency that the owner of the servient estate has a reasonable opportunity to become aware of it."). In that regard, the *Restatement* observes:

> "Although the terms ['open' and 'notorious'] are often stated conjunctively, the requirements are disjunctive. A use that is actually known to the owner of the servient estate satisfies the requirement even though it is not open. An openly visible and apparent use satisfies the requirement even if the neighbors have no actual knowledge of it. A use that is not open but is so widely known in the community that the owner should be aware of it also satisfies the requirement."

The evidence showed that appellant had notice that respondents were using the road. The land sale contract by which appellant acquired a portion of his property from Ireland in 1979 provides:

> "ALSO EXCEPTING a right of way for all road purposes over, across and along a strip of land sixty (60) feet in width and lying north of and adjacent to Butler Creek * * *."

In addition, appellant testified that he was aware of the document creating the way. That document described the easement as a "right of way for road purposes" and stated that it provides "vehicular and public utility access" to six parcels,

including the parcels owned by the Montagnes, Pakes, and Wests. The fact that appellant never saw the Wests or Pakes use the road is not dispositive because he knew that the road was built to provide access to their parcels.

Moreover, the existence of the road itself was evidence of respondents' use. The road was clearly visible and apparent. Appellant does not seriously contend otherwise. The existence of a well-established road informs the owner of the underlying land that someone is using it where, as here, the owner knows that the road was built pursuant to an easement to provide access to other properties. The Supreme Court's decisions have recognized the significance of a visible structure in determining whether an owner had notice of an adverse claim. *See Arrien v. Levanger,* 263 Or 363, 369-70, 502 P2d 573 (1972) (concluding, in case where prescriptive easement was established by the defendant's regular flooding of the plaintiff's land, that the "existence of the dam on defendant's land served as a constant warning to plaintiff that the flooding * * * would continue" and was "of sufficient recurrence to give plaintiff warning" of the defendant's claim); *Feldman,* 196 Or at 467, 470 (noting that driveway was "perfectly apparent to all who might have occasion to observe it" and "clearly indicated its intended use for the benefit of both properties"; noting also that, where there was no "direct evidence" of daily use of the driveway during a period of construction, it was "reasonable to infer that * * * necessary materials were transported over the driveway and [that] workmen used the driveway").

By contrast, where a road is ill-defined, "vague and general testimony purporting to describe the claimant's use" has been held insufficient to establish open and notorious use. *Thompson,* 270 Or at 546 (prescriptive rights not established where the defendants testified that they "could not tell exactly where [the road] was because of an overgrowth of grass," never saw the plaintiff using the road, and the plaintiff's testimony was unclear as to whether he traveled over the defendants' land). However, that is not the circumstance here. This case, rather, is analogous to those in which an owner has been charged with notice of visible encroachments on his or her property. *See Green v. Ayres,* 272 Or 117, 121, 535 P2d 762 (1975) (noting principle that, where an

encroachment is open and notorious and has continued for a long time, it is presumed that it is being held adversely). We conclude that respondents' use of the road was open and notorious.

▮▮▮ We also conclude that respondents established that their use of the road was adverse, that is, hostile, to appellant. The use of an easement under a mistaken belief as to the recorded location of a way is sufficient to satisfy the element of hostility. *See Faulconer v. Williams*, 327 Or 381, 391, 964 P2d 246 (1998) (describing that principle as "pure mistake" doctrine). Use can be adverse where it is "based on a claim of right derived from [a] recorded easement." *Garrett v. Mueller*, 144 Or App 330, 337, 927 P2d 612 (1996), *rev den*, 324 Or 560 (1997). In this case, respondents believed that they were entitled to use the road and that it was located within the recorded description of the way. It is of no moment that appellant may have given the Montagnes permission to use the recorded way. *See Hay*, 262 Or at 196 (concluding that evidence that the claimants admitted that they would have discontinued their use if the owner had made them stop did "not negative adverseness").

We conclude that respondents established by clear and convincing evidence each of the disputed elements of their claims for prescriptive easements across those portions of the road that are situated outside the recorded description of the way. We therefore affirm the trial court's grant of prescriptive easements to respondents over the disputed portions of the road.[8]

▮▮ ▮▮ In his final assignment of error, appellant contends that the trial court erred in requiring him to pay a portion of the maintenance costs incurred by the Weisels in improving and repairing the road. Because the judgment on that claim is for money damages and, thus, is "at law," we review the trial court's findings of fact for any competent supporting evidence and its legal conclusions for errors of law. *McIntyre v. Photinos*, 175 Or App 478, 482, 28 P3d 1259 (2001).

---

[8] That conclusion obviates the need to address appellant's third assignment of error, namely, that the trial court erred in also finding that the parties had an agreement as to the current location of the road.

Appellant asserts that he was not subject to the road maintenance agreement, which, by its terms, applies only to the portion of the road that crosses the Coleman property that he acquired in 1982. He also argues that the Weisels may not recover those costs under a statutory theory of relief because they failed to plead such a theory and, in any event, the Weisels failed to prove that the costs were reasonable.

The Weisels assert that appellant was bound by the road maintenance agreement and that, even if he was not, he was liable for the costs under ORS 105.175,[9] which they claim they sufficiently raised in their trial memorandum. The Weisels also assert that they were not required to establish that the expenses were reasonable.

---

[9] ORS 105.175 provides, in part:

"(2) The cost of maintaining the easement in repair shall be shared by each holder of an interest in the easement, pursuant to the terms of any agreement entered into by the parties for that purpose or any recorded instrument creating the easement. Any such agreement, or a memorandum thereof, shall be recorded in the real property records of the county in which the easement is located. Failure to record the agreement shall not affect the enforceability of the agreement among the parties to the agreement and any other person with actual notice of the agreement.

"(3) The cost of maintaining the easement in repair in the absence of an agreement and in the absence of maintenance provisions in a recorded instrument creating the easement shall be shared by each holder of an interest in the easement in proportion to the use made of the easement by each holder of an interest in the easement.

"(4) Unless inconsistent with an agreement between the holders of an interest in an easement or a recorded instrument creating the easement, in determining proportionate use and settling conflicts the following guidelines apply:

"(a) The frequency of use and the size and weight of vehicles used by the respective parties are relevant factors.

"(b) Unless inappropriate, based on the factors contained in paragraph (a) of this subsection or other relevant factors, costs for normal and usual maintenance of the easement and costs of repair of the easement damaged by natural disasters or other events for which all holders of an interest in the easement are blameless may be shared on the basis of percentages resulting from dividing the distance of total normal usage of all holders of an interest in the easement into the normal usage distance of each holder of an interest in the easement.

"(c) Those holders of an interest in the easement that are responsible for damage to the easement because of negligence or abnormal use shall repair the damage at their sole expense."

ORS 105.180 provides a civil action "for money damages or specific performance or contribution" against any holder of an interest in an easement that fails to maintain the easement in accordance with an agreement or the statute.

We begin with the issue whether the Weisels proved a contractual basis for their claim. By its terms, the road maintenance agreement applies only to the "Easement Easterly," which, as discussed, crosses the Coleman property that appellant acquired in 1982 and the parcels owned by the Weisels, Pakes, and Wests. The road maintenance agreement does not apply to the westerly portion of the road that crosses the property that appellant acquired from Ireland in 1979 and that is the subject of the present dispute. As Lee Weisel acknowledged at trial, Ireland, appellant's predecessor in interest to the property that the westerly portion of the easement crosses, never signed the road maintenance agreement.

The Weisels nonetheless insist that appellant's contract of sale with Ireland bound appellant to the road maintenance agreement. We disagree. The Ireland-Elliott contract states, "The parties hereto expressly agree to promote an agreement which the parties have heretofore discussed concerning the use and maintenance of the road along and adjacent to Butler Creek." The referent of that provision is not readily apparent from the text of the contract. Moreover, the Weisels presented no evidence concerning any such agreement, and no other provisions regarding road maintenance exist in the contract between Ireland and appellant. Although Coleman testified that he showed the road maintenance agreement to appellant, the context of that discussion concerned whether Coleman and appellant could reach an agreement regarding the *westerly* portion of the road, not, as the Weisels urge, to notify appellant that there already was such an agreement in place. In fact, appellant testified that he had maintained the westerly portion of the road at his sole expense.

The trial court found that appellant was not aware of the road maintenance agreement when he acquired the Coleman property, and we are bound by that finding in reviewing the judgment on the instant claim. *McIntyre*, 175 Or App at 482. Despite having made that finding, though, the court entered a money judgment against appellant for maintenance costs under ORS 105.175. We next consider whether

the trial court properly imposed liability on appellant under that statute.[10]

ORS 105.175(2) and (3) provide alternative theories for the recovery of road maintenance costs based on either a written agreement or, in the absence of such an agreement, compliance with a statutory process.[11] From its conclusion that appellant was liable as a "successor[ ] in interest from Coleman," it appears that the trial court reasoned that, because appellant acquired Coleman's property in 1982, he was bound by the agreement. We disagree.

The trial court's finding that appellant was not aware of the road maintenance agreement when he acquired the Coleman property is fatal to the statutory claim. ORS 105.175(2) provides that unrecorded maintenance agreements are enforceable only against "parties to the agreement and any other person with *actual notice* of the agreement." (Emphasis added.) Appellant was not a party to the road maintenance agreement covering the easterly portion of the road, and the court found that he had no actual notice of that agreement. Appellant acquired Coleman's property through a foreclosure sale, not from Coleman. Moreover, the road maintenance agreement was not recorded until after appellant acquired that property. Accordingly, we conclude that the trial court erred in requiring appellant to pay for the road maintenance costs, and we reverse the money judgment against him.

Judgment on Weisels' claim against appellant for maintenance costs of $8,358.88 reversed; otherwise affirmed.

---

[10] We reject without extended discussion appellant's contention that the Weisels did not adequately plead a statutory theory of recovery. Although the Weisels did not identify or plead the terms of a statute in their counterclaim for road maintenance, they relied on ORS 105.175 as a basis for that claim in their trial memorandum. Appellant did not object to that method of raising the issue. Under the circumstances, we conclude that the statutory theory was tried by consent. *See* ORCP 23 B; *see also Garrett*, 144 Or App at 340 n 14 (holding that, although not pleaded, implied easement claim was tried by consent where discussed in the plaintiffs' trial memorandum and addressed by the evidence).

[11] The Weisels do not contend that appellant is liable for road maintenance costs under ORS 105.175(3). Accordingly, we do not consider that issue.