Argued and submitted December 4, 2001, reversed in part and affirmed in part on appeal; affirmed on cross-appeal July 17, 2002

Gwendolyn J. SHOLL,
*Appellant - Cross-Respondent,*

*v.*

Wayne S. ANDERSON
and Elaine M. Anderson,
*Respondents - Cross-Appellants.*

99-10159; A109770

50 P3d 1248

George B. Heilig argued the cause for appellant - cross-respondent. With him on the briefs was Cable Huston Benedict Haagensen & Lloyd.

George W. Kelly argued the cause and filed the brief for respondents - cross-appellants.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff appeals from a judgment granting defendants the right, under an implied agreement, for the exclusive maintenance of a disputed strip of land and also an award for damages to the same strip of land. Defendants Wayne and Elaine Anderson cross-appeal from the portion of the judgment that rejected their adverse possession claim to the strip of land and quieted title in plaintiff. We review *de novo*, ORS 19.415(3), and reverse and remand the portion of the judgment that created an implied agreement; otherwise, we affirm.

Plaintiff Gwendolyn Sholl and defendants are adjacent property owners. Plaintiff has resided on tax lot 400 located in Benton County since 1984 and has owned the lot since 1990. Defendants have owned tax lots 990 and 1000, which are adjacent to and south of plaintiff's property, since 1973. Plaintiff's south boundary is the north boundary of defendants' parcels.[1]

In 1961, plaintiff's predecessor in interest declared an express easement along the southern boundary of plaintiff's property, which was implemented by an existing graveled roadway that varies in width. The easement was for the benefit of three adjacent parcels to the south, two of

---

[1] The adjacent tax lots are shown on the map below.

which are defendants' properties.[2] The roadway is approximately 14 feet in width and runs in an east-west direction. It is not public, and it is for ingress and egress only. The graveled roadway runs parallel to the boundary line separating the parties' properties. A gap of approximately eight feet in width exists between the boundary line and the southern edge of the graveled portion of the roadway. It is that gap that is the subject of this appeal.

When defendants bought their property in 1973, the title report spoke of defendants' property being burdened by a utility easement. The only power lines they saw were lines immediately north of the roadway. Defendants assumed that their property line was also north of the roadway.

In June 1990, defendants and plaintiff's immediate predecessor in interest entered into a road maintenance agreement whereby the parties and their successors agreed to share any expenses for maintenance or improvements to the roadway.

Sometime after defendants bought their property, they removed brush on both sides of the roadway and planted a lawn on the south area of the roadway. Plaintiff generally mowed and maintained the north side of the roadway while defendants mowed and maintained the south side.

In 1996, plaintiff had her southern property line surveyed. At that time, plaintiff did not know the exact location of her southern boundary line but knew it was "somewhere south of [the roadway]." When plaintiff discovered how far south her property line ran, she offered to sell defendants a strip of her land.[3] Plaintiff testified that during the conversation with defendants regarding the proposed sale of the strip, Wayne Anderson stated, "Well I really didn't know

---

[2] Tax lot 990 is owned and occupied by defendants. Tax lot 1000 is also owned by defendants but is rented to and occupied by defendants' son. The third parcel, tax lot 1100, which is owned by Susan Fleming, is also benefitted by the easement. It is located at the west end of the road and is not subject to the judgment being appealed.

[3] When questioned about the size of the strip she offered to sell to defendants, plaintiff responded that it was a 16- to 20-foot-wide strip along the 560-foot long edge of the southern boundary of her property. That 16 to 20 feet would have included a portion of the roadway and the disputed strip of property to the south of the roadway.

where the boundary was." Anderson never told plaintiff that he thought he was the owner of the strip plaintiff was offering to sell. Rather, after a few days of deliberating plaintiff's offer, defendants declined the offer.

In 1998, plaintiff asked defendants to remove certain plantings they had placed on the strip between the southern boundary and the roadway. Defendants refused. Plaintiff removed a portion of the lawn and other plantings on the strip with a tractor. Plaintiff then sued to eject defendants from the land and to quiet her title to it. Plaintiff also requested relief regarding the maintenance of the roadway. Defendants counterclaimed for damages for plaintiff's removal of the lawn and for ownership of the roadway and the areas adjacent to the roadway by adverse possession.[4]

The trial court rejected defendants' adverse possession claim and held that plaintiff was the owner of the contested strip of property south of the 14-foot easement that was established in 1961 by plaintiff's predecessor. The trial court also held that defendants have the right to maintain the graveled surface of the roadway. With respect to the *maintenance* of the contested strip of property south of the roadway, in a letter opinion, the trial court ruled:

"4. Over the past 38 years, the owners of the properties adjacent to the easement have created an implied agreement as to how the land immediately adjacent to the gravel road will be maintained. The current owners disagree about what that implied agreement allows the [defendants] to do on the land south of the graveled portion of the roadway. The Court must decide this issue (see paragraph 5)

"5. Unless the parties can otherwise agree in writing and for so long as the use of the easement remains substantially the same as it has been:

"a. [Plaintiff] will be responsible for keeping grass and brush mowed and for removing other things that could interfere with the full use of the road from the area to the immediate north of the paved portion of the road.

---

[4] On cross-appeal, defendants contend that they own only the strip by adverse possession, not the roadway.

"b. [Defendants] will be responsible for keeping grass and brush mowed and removing other things that could interfere with the full use of the road from the land between the south edge of the paved portion of the road and the North line of their property. In the exercise of such responsibility, [defendants] may plant and mow grass and place substances such as bark mulch on this strip of land. However, [defendants] may not plant flowers, shrubs, or trees in the area nor may they place any object in the area that cannot readily be removed. The logs which have been placed adjacent to the road to keep the gravel in the roadway and to delineate the traveled portion of the road can remain since they are not affixed to the land and may readily be removed."

The trial court ruled that defendants have the right to maintain a grass lawn on the strip and awarded defendants $475 in damages for the damage plaintiff caused to the strip with the tractor.

On appeal, plaintiff seeks reversal of the portion of the opinion granting defendants the exclusive right and responsibility to maintain the strip, the damage award, and the road maintenance provisions. We affirm the award of damages without further discussion. Turning to the implied agreement created by the trial court, plaintiff argues that the property burdened by the easement remains vested in her and that the trial court's ruling that granted defendants certain rights in the strip was an impermissible creation of an implied agreement that was not pled or an impermissible expansion of the express roadway maintenance agreement. Defendants cross-appeal, assigning error to the court's denial of its adverse possession claim.

Defendants concede that neither party specifically pled the existence of an implied agreement. Rather, defendants argue that they sought far greater rights—outright possession by way of adverse use—which is an argument they maintain on cross-appeal. Defendants argue that, if their adverse possession claim fails on appeal, the implied agreement ruling was proper and has ample support in the law.

■ ■     Because defendants' assignment of error on cross-appeal could be dispositive, we begin by reviewing it. To successfully assert an adverse possession claim to gain ownership and title to a piece of property, defendants must show by clear and convincing evidence "actual, open, notorious, exclusive, continuous and hostile use of the property for a 10-year period, under an honest belief that the party is the owner of the property." *McIntyre v. Photinos*, 175 Or App 478, 483, 28 P3d 1259 (2001); ORS 105.620. "Defendants bear a 'heavy burden' to establish ownership by adverse possession." *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 560, 994 P2d 106 (1999) (citation omitted).

Defendants argue that the evidence of their activities on the strip was sufficient to demonstrate that they had obtained ownership of the strip by adverse possession. Plaintiff argues that defendants have failed to establish that their use was open, notorious, and hostile. Because we agree with plaintiff that defendants' use of the property was not hostile, we begin and end our analysis with that element.

■     "Hostility" may be established in one of two ways: (1) pure mistake or (2) hostility in fact. *Mid-Valley Resources, Inc. v. Engelson*, 170 Or App 255, 259-60, 13 P3d 118 (2000), *rev den* 332 Or 137 (2001). We begin with the pure mistake doctrine.

> "The 'pure mistake' doctrine provides that, when a party possesses the land under the mistaken belief of ownership, the court does not inquire whether that party intended to possess the property as its true owner. The mistaken belief, however, must be a pure mistake, not a mistake based upon conscious doubt. A pure mistake exists when a person taking property under a deed that properly identifies the boundaries 'actually occupies other property that he mistakenly believes is covered by the deed.'" *Id.* at 260 (citations omitted).

The evidence establishes that defendants had conscious doubt as to where the property line was. Plaintiff testified, and Wayne Anderson corroborated, that he "really didn't know where the boundary was." When plaintiff offered to sell defendants the southern strip of land, defendants rejected the offer a few days later rather than asserting an ownership

interest in the strip of land. The evidence shows that defendants were aware of the possibility that the southern strip belonged to plaintiff, and thus, the hostility element under the "pure mistake" doctrine is lacking. *See Faulconer v. Williams*, 327 Or 381, 390, 964 P2d 246 (1998) (conscious doubt exists " 'where it appears that the possessor was aware of the possibility that he might be intruding upon his neighbor's land' ") (quoting Lon L. Fuller, *Adverse Possession— Occupancy of Another's Land Under Mistake as to Location of a Boundary*, 7 Or L Rev 329, 336 (1928)); *Engelson*, 170 Or App at 261.

■      Nor can defendants rely on "hostility in fact" to satisfy the hostility element. Under that doctrine, defendants "must establish hostility by demonstrating a subjective intent to possess the property as its true owner." *Engelson*, 170 Or App at 260. Defendants' use of the land must be inherently inconsistent with plaintiff's rights. *Hoffman*, 329 Or at 561.

Here, the evidence was that defendants planted a lawn and some other plants on the strip of land, mowed that lawn, and, on occasion, removed some brush. Such activities do not demonstrate an intent to be the true owner of the land. None of defendants' activities was inconsistent with plaintiffs' use of the land, nor was it inconsistent with the road maintenance agreement. There is no evidence that defendants ever erected a fence, posted a no trespassing sign, objected to plaintiff's activities, or ordered plaintiff off the disputed property. *See Hoffman*, 329 Or at 563-64 (wire fence that predated current owner's ownership, "no trespassing" signs intended to keep out hunters, occasional use by cattle, and occasional thinning of brush by ranch hands insufficient to establish hostility). On these facts, we conclude that defendants have not shown by clear and convincing evidence that their use was hostile. Their adverse possession claim fails.

■      Because we conclude that defendants did not obtain title to the strip by adverse possession, we now address plaintiff's appeal. Plaintiff assigns error to the trial court's *sua sponte* creation of an implied agreement between the parties governing the maintenance of the strip. Plaintiff argues that that issue was neither framed by the pleadings nor litigated

at trial. We agree with plaintiff that the trial court erred in granting relief on a theory that the parties did not plead.

■      At no point in the pleadings or proceedings did the parties raise the issue of an implied agreement governing the property on either side of the roadway. "[A] trial court has no authority to render a decision on an issue not framed by the pleadings." *Navas v. City of Springfield*, 122 Or App 196, 201, 857 P2d 867 (1993); *see also Central Oregon Fabricators, Inc. v. Hudspeth*, 159 Or App 391, 403, 977 P2d 416, *rev den* 329 Or 10 (1999). Thus, the trial court erred in creating an implied agreement that impermissibly expanded defendants' easement rights. Furthermore, as part of that implied agreement, the trial court held that defendants have the exclusive right to maintain the road surface. That was error.[5] We therefore reverse that portion of the judgment that created the terms of an implied agreement for landscaping and maintenance of the property adjacent to the roadway and the roadway itself.

On appeal, portion of judgment creating an implied agreement for maintenance of strip and graveled roadway reversed; otherwise affirmed; affirmed on cross-appeal.

---

[5] A roadway maintenance agreement exists between the parties. It states that all "the expenses incurred for the maintenance of [the roadway] shall be jointly and severally [the parties'] responsibility[.]"