226                  June 11, 2025                  No. 527

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Maggie WARREN,
*Plaintiff-Respondent,*

*v.*

Lindsay BURNHAM
and Stan Burnham, husband and wife,
*Defendants-Appellants,*

*v.*

Laura J. JOSEPH
et al.,
*Third Party Defendants.*

Washington County Circuit Court
21CV31980; A182067

Brandon M. Thompson, Judge.

Argued and submitted February 18, 2025.

Jonathan M. Radmacher argued the cause for appellants. Also on the briefs was McEwen Gisvold LLP.

Paul B. Barton argued the cause for respondent. Also on the brief was Olsen Barton LLC and Chris M. Macmillan and Demco Law Firm, P.S.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

This is a residential property dispute between neighbors regarding a strip of land approximately 18 inches wide and 36 feet long that runs alongside defendants' driveway. The disputed strip is included in defendants' property deed, but plaintiff claims to have acquired title by adverse possession. The case went to trial on plaintiff's claims for quiet title and nuisance and defendants' counterclaim for trespass. The trial court denied defendants' motion to dismiss for insufficient evidence under ORCP 54 B(2) and ultimately rendered a verdict in plaintiff's favor, ruling that plaintiff had acquired title by adverse possession and ordering defendants to remove a recently built fence. Defendants appeal the resulting limited judgment.[1] As described below, we agree with defendants that the trial court erred in denying their ORCP 54 B(2) motion. Specifically, we conclude that the evidence was legally insufficient to establish the "open and notorious" requirement for adverse possession and, accordingly, reverse and remand.

"ORCP 54 B(2) is the rule allowing a motion to dismiss to test the sufficiency of evidence at the close of plaintiff's case in nonjury cases[.]" *Castro and Castro*, 51 Or App 707, 710, 626 P2d 950 (1981). On review of the denial of such a motion, "we review the entire record to determine whether sufficient evidence was presented to establish a *prima facie* case on the applicable claim, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff." *Fowler v. Cooley*, 239 Or App 338, 344, 245 P3d 155 (2010) (internal quotation marks and brackets omitted). "[W]e consider the whole record, including evidence introduced by the defendant, to determine whether the plaintiff presented a *prima facie* case." *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990). We state the facts accordingly.

The parties live next door to each other in a residential neighborhood in Beaverton. Plaintiff owns lot 97, which

---

[1] The court entered a limited judgment due to the pendency of defendants' third-party claims against their predecessors in interest, which were bifurcated for trial and are not at issue in this appeal. Also not at issue on appeal are various claims and counterclaims that plaintiff and defendants withdrew before or during trial. We discuss herein only the claims actually decided in the limited judgment.

she purchased in 2020, and defendants own lot 98, which they purchased in 2018. Their dispute concerns an approximately 18-inch strip of land that runs alongside defendants' driveway. The disputed strip is shown in the center of the survey map excerpted below:



It is also shown on this excerpt from a 2007 photograph, with the white lines showing the deeded property lines, and the arrows pointing to the disputed strip:



(Arrows added.)

Both properties were developed by the same developer, who built the houses, put in the landscaping, and sold both lots in 1996. Lot 97 was sold to Pan (1996 to 2001), who

sold it to the Lehnans (2001 to 2007), who sold it to Ruhl (2007 to 2017), who sold it to Wijsman (2017 to 2020), who sold it to plaintiff (2020 to present). Lot 98 was sold to the Josephs (1996 to 2018), who sold it to defendants (2018 to present).

The witnesses at trial included plaintiff, most of plaintiff's predecessors, defendants, and defendants' predecessors. As aptly summarized by the trial court, all of the predecessors who testified said essentially the same thing—that no one had ever gotten a survey of the lots, that everyone assumed that the property line ran along the edge of lot 98's driveway, but that no one had put any thought into the issue or ever cared where the property line was, because everyone got along well and were very neighborly.

In that context, from 1996 until 2017, plaintiff's predecessors mowed and watered the entire lawn area that lies physically in front of lot 97, including the disputed strip, without anyone ever discussing where the property line was. Pan and the Lehnans mowed the lawn themselves. Shortly before moving out, the Lehnans removed some grass and laid some bark dust in the corner of the lawn area that comes to a point at the street (where the lowermost arrow is pointed above), in conjunction with planting a tree and some bushes on lot 97. Nothing was planted in the disputed strip, but part of it was covered in bark dust as a result. After Ruhl bought lot 97 in 2007, he did not personally do any mowing, but his lawn service mowed the same area that his predecessors had, including the disputed strip, both while Ruhl lived there from 2007 to 2013 and while the property was rented from 2013 to 2017. As for the period from 2017 to 2020, Wijsman did not testify at trial, and there is no evidence as to what lawn maintenance, if any, she did in the disputed strip.

Other than maintaining it, there is no evidence that either party's predecessors did anything with the disputed strip.[2] The neighborhood children played freely on the lawns

---

[2] The one caveat to that statement is that, in two unspecified years between 2007 and 2017, Ruhl put up Christmas lights for the holidays, including a line that ran inside the disputed strip for approximately half its length. It is unknown how long they were up or whether the Josephs were home both times. Given the vagueness of the evidence on the Christmas lights (as relevant to a claim that had to be proved by clear and convincing evidence), we do not view it as significant to the analysis and limit our text discussion to the lawn maintenance. Plaintiff mentions the Christmas light testimony only in passing in her fact statement.

and driveways of both lots, which the trial court described as "consistent with normal use in a neighborhood."

Plaintiff bought lot 97 in 2020, and a dispute soon arose with defendants regarding the location of the property line. Defendants had a survey done, which showed that the property line was 18 inches from the edge of the driveway. Defendants placed flags on the property line. Shortly thereafter, plaintiff began a large landscaping project in her front yard, and the landscapers, unbeknownst to plaintiff, ripped up the grass in the entire 18-inch strip. Defendants objected, and the landscaper placed new grass in the strip. In October 2020, defendants built a fence along the property line. In August 2021, plaintiff filed this action.

The claims that went to trial were plaintiff's quiet title and nuisance claims and defendants' trespass counterclaim.[3] At the close of plaintiff's evidence, defendants filed a written motion to dismiss based on insufficient evidence under ORCP 54 B(2). The trial court denied the motion.

The trial court subsequently rendered a verdict for plaintiff on her quiet title claim, finding that plaintiff's predecessors had acquired title to the disputed strip by adversely possessing it from 1996 to 2006. (The court did not specify the vesting period, but it made clear that it viewed all time periods as equal dating back to 1996, thus implicitly finding that title transferred by adverse possession in 2006.) The court acknowledged that plaintiff's predecessors had engaged in "very *de minimis* activity" in the disputed strip but disagreed with defendants that it was insufficient to put defendants' predecessors on notice that plaintiff's predecessors were claiming ownership. It noted "the uncontroverted testimony *** that the owners of lot 97 always acted like the disputed property belonged to them and in no instance tried to hide that belief," as well as the evidence that defendants' predecessors knew that their neighbors were maintaining the disputed strip in conjunction with maintaining their own lawn. Defendants were ordered to

---

[3] The case was initially tried in July 2022, but the trial ended after one day due to a settlement. That settlement later fell apart, and a new trial was granted. With the parties' agreement, the 2022 trial evidence was made part of the record for the 2023 trial.

remove the fence that they had built on the deeded property line. The court dismissed the nuisance and trespass claims.

The trial court entered a limited judgment for plaintiff, which defendants appeal. As they did in the trial court, defendants argue that the evidence was legally insufficient to prove adverse possession. Defendants focus their arguments on appeal on the open and notorious, exclusive, and continuous requirements.[4]

### ANALYSIS

This case involves a statutory claim for adverse possession. *See Stiles v. Godsey*, 233 Or App 119, 124-25, 225 P3d 81 (2009) (explaining that, in 1989, the legislature enacted ORS 105.620, which codified the common law and added an "honest belief" requirement). Under ORS 105.620, a person claiming ownership by adverse possession must prove by clear and convincing evidence that they or their predecessors in interest "maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years[,]" while holding an objectively reasonable honest belief of ownership. ORS 105.620 (1)(a) - (b) (requirements); ORS 105.620(1)(c) (burden of proof). Allowing parties to acquire ownership of real property by adverse possession serves a number of policy purposes, such as "encouraging and rewarding the productive use of land," "discouraging the abandonment of land," and promoting the "certainty of land ownership." *Glenn v. Glenn*, 310 Or App 661, 667 n 6, 487 P3d 856 (2021).

We have described the various elements of adverse possession as follows:

- *Actual.* "The element of actual use is satisfied if a claimant establishes a use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *Stiles*, 233 Or App at 126 (internal quotation marks omitted).

---

[4] In its letter opinion, the court stated that there was "no dispute that the elements of 'maintained actual, open and notorious' have been met" and that defendant agreed that hostility was proved (under the pure mistake doctrine)—although the court then proceeded to address the open and notorious requirement. To be clear, defendants challenged the sufficiency of the evidence on those elements in their motion to dismiss, and plaintiff does not dispute that the issues raised on appeal were properly preserved.

- *Open and notorious*. "To establish a use that is open and notorious, plaintiffs must prove that their possession is of such a character as to afford the owner the means of knowing it, and of the claim." *Id*. (internal quotation marks omitted).

- *Exclusive*. "The exclusivity of the use also depends on how a reasonable owner would or would not share the property with others in like circumstances." *Id*.

- *Hostile*. "A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title." ORS 105.620(2)(a).

  o "Claim of right" requires either "hostility in fact" or a "pure mistake." *Sholl v. Anderson*, 182 Or App 659, 665, 50 P3d 1248 (2002). "Hostility in fact" means the claimant has "a subjective intent to possess the property as its true owner" and uses the land in a way that is "inherently inconsistent with [the true owner's] rights." *Id*. at 666 (internal quotation marks omitted). A "pure mistake" means the claimant possesses the property "under the mistaken belief of ownership" as to which the claimant has no "conscious doubt." *Id*. at 665 (internal quotation marks omitted). Being "aware of the possibility" that someone else owns the property is a conscious doubt. *Id*. (internal quotation marks omitted).

  o "'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance." *Id*.

- *Continuous*. "A use is continuous if it is constant and not intermittent." *Stiles*, 233 Or App at 126 (internal quotation marks omitted). "The required constancy of use, again, is determined by the kind of use that would be expected of such land." *Id*. (internal quotation marks omitted).

- *Honest belief*. The claimant must prove that, when they or their predecessors first entered into possession of the property, they did so having the honest belief that they were its actual owner. That belief must have continued through the vesting period, had an objective basis, and been reasonable under the particular circumstances. ORS 105.620(1)(b).

In this case, even assuming *arguendo* that there was sufficient evidence to prove all of the other elements of adverse possession, we agree with defendants that the evidence was legally insufficient to establish "open and notorious" possession. The developer planted all of the grass on lots 97 and 98, including the grass in the disputed strip, before selling both lots in 1996. Because of the shape and layout of the lots, the disputed strip lies physically in front of plaintiff's property (between her property and the street), and plaintiff's predecessors included it in their mowing and other basic lawn maintenance. They did so under circumstances in which the owners of both lots got along well and did not care where the property line was, although everyone assumed that it was at the edge of defendants' driveway.

Given the undisputed circumstances that existed from 1996 until at least 2017, we conclude that, as a matter of law, plaintiff's predecessors' basic maintenance of 18 inches of grass alongside lot 98's driveway, in conjunction with maintaining their own lawn, did not constitute open and notorious possession of the kind required for adverse possession. To be open and notorious, the possession must be "of such a character" as to afford defendants' predecessors "the means of knowing it, and of the claim." *Stiles*, 233 Or App at 126 (internal quotation marks omitted). Limited use of property can qualify as open and notorious possession, "but only if it is significant enough to put an owner on notice that his or her title is being challenged." *Hoffman v. Freeman Land and Timber, LLC*, 329 Or 554, 560, 994 P2d 106 (1999); *see, e.g.*, *Reeves et al. v. Porta*, 173 Or 147, 153, 144 P2d 493 (1944) (occasional pasturing of cows in "a piece of brushy wilderness" was insufficient "to put an owner on notice that his title is being challenged by adverse possession"). Importantly, the question is not whether plaintiff's predecessors did anything to hide their mistaken belief regarding the location of the property line. The question is whether they did enough to put the true owner on notice of a competing *claim of ownership*. Whether a non-owner's use of property was of such a character as to put the true owner on notice of a title challenge ultimately must be judged from the perspective of the true owner.

So viewed, the evidence here was legally insufficient to prove the open and notorious element, at least as to the grassy portion of the disputed strip, because it was insufficient to put defendants' predecessors on notice of a title challenge. That is, it was insufficient to put the Josephs on notice that plaintiff's predecessors were asserting ownership of the strip, rather than simply being neighborly, or mowing without regard to the property line because no one cared where it was and the area at issue was more visually significant to the house on lot 97. It bears emphasis that this case involves adjacent residential lots in a suburban neighborhood and that no one used the disputed strip for anything other than its aesthetic value, except the neighborhood children, who were allowed to play freely on both properties' front lawns and driveways. Although the parties' predecessors universal lack of interest in the exact location of the property line does not defeat the hostility element, given the pure mistake doctrine (as the trial court correctly recognized), it is relevant to other elements and, here, is especially significant to the open and notorious element. On this record, plaintiff's predecessors' mowing and basic maintenance of the grass in the disputed strip in conjunction with mowing and maintaining their own lawn was legally insufficient to prove open and notorious possession of the type required for transfer of title by adverse possession.

Our ruling in that regard is consistent with case law from other jurisdictions. Neither the parties nor we have found any published decision in Oregon or elsewhere in which maintenance of existing grass near the property line in a residential neighborhood alone has been deemed sufficient to prove open and notorious possession for adverse possession purposes. The non-Oregon cases that we have found involving mowing all involved other, more intrusive activities as well. *See, e.g.*, *Anderson v. Poirier*, 121 Conn App 748, 754, 997 A2d 604, 609 (2010) (the plaintiffs "clearly demonstrated their open and notorious use of the claimed property" where they not only mowed the grass but "conducted various activities on the disputed strip throughout the statutory period consistent with the residential nature of the area, namely, construction, maintenance and use of a driveway, sidewalk, gardens, front and back lawns, and

a dock"); *Schlichting v. Cotter*, 109 Conn App 361, 367, 952 A2d 73, 78 (2008) (the plaintiff engaged in open and visible possession of the disputed property where she sprayed, pruned, and removed trees; planted and maintained ferns, bushes, and shrubs; removed poison ivy and sumac; placed gypsy moth traps; blew and raked leaves; mowed and fertilized the grass; and paved, plowed, and sealed a driveway); *McManus v. Kluttz*, 165 NC App 564, 567, 573, 599 SE2d 438, 442 (2004) (the plaintiff engaged in open and notorious use of a strip of land included in both parties' deeds, where she seeded grass, mowed once a month for seven years, and planted three pampas bushes, and in doing so created a clear visible line marking the extent of her possession, because the defendants' yard was "unkempt and overgrown with waist-high scrub brush, weeds, and smilax"); *Acampora v. Pearson*, 899 A2d 459, 466-67 (RI 2006) (the plaintiff engaged in open and notorious use by regularly mowing and fertilizing, engaging in recreational activities such as horseshoes, and placing a shed in the disputed area).

The only remaining question, in our view, is whether the Lehnans' grass removal and bark dust placement in the lower portion of the disputed strip in late 2006 or early 2007 affects the disposition in any way. We conclude that it does not. The complaint identifies the "subject property" as the entire disputed strip along defendants' driveway, and plaintiff has never suggested that her predecessors might have adversely possessed a small portion of the strip near the street even if they did not adversely possess the entire strip. The case was litigated accordingly, with the parties focusing almost entirely on plaintiff's predecessors mowing and grass maintenance, both in the trial court and on appeal. The portion of the strip affected by the bark dust was never clearly defined. The trial court estimated from photographs that bark dust was present in 10 feet of the strip, but it is unclear how much grass the Lehnans actually removed, and it is also unclear whether the amount of bark dust changed over time. *See Case v. Burton*, 250 Or App 14, 23, 279 P3d 259 (2012) (noting that an adverse possession claimant must identify "'the property adversely used'" by clear and convincing evidence (quoting *Winthers v. Bertrand*, 239 Or 97, 99, 396 P2d 570 (1964)). Even assuming *arguendo* that the

evidence might have been sufficient to prove adverse possession of a small portion of the strip, it was insufficient to prove ownership of the entire strip, which was the issue presented by the complaint, plaintiff's arguments at trial, and the motion to dismiss.

Accordingly, we conclude that the trial court erred in denying defendants' motion to dismiss for insufficient evidence under ORCP 54 B. The evidence was legally insufficient to prove open and notorious possession of the disputed strip, that is, possession of such a character as to put defendants' predecessors on notice that plaintiff's predecessors were claiming title to the strip.

Reversed and remanded.